Please be seated. We're prepared to hear argument in our second case, Payne v. Moser. Mr. Clark, please come forward. May it please the court, your honor, Andrew Clark, counsel for Jeffrey Payne, who is the appellant in this matter, and also the plaintiff down in district court. This is a civil rights matter alleging excessive force. At the outset, I do want to let the court know that we are voluntarily dropping our issue number two as it deals with search and seizure. So today I will be speaking about issue one and issue three. Issue one is the first issue that I'm going to take up, and that has to do with whether or not the district court erred by granting summary judgment as to count one, which is the excessive use of force. And the district court erred when they made impermissible factual determinations about the evidence in this case. I understand that during the summary judgment portion of a case, the court is allowed to review the evidence and make determinations based on the evidence, but the court can't sit in the place of the jury and making determinations about the evidence in the case. And that's exactly what the district court judge did here. When looking at the facts of this case on August 2nd of 2022, Jeffrey Payne was someone that was uninvolved in any of the initial parts of this case. The record shows that there was an individual named Hector who was being investigated by the Fairfax County Police Department, the narcotics division, and he was the first one that was arrested. All of this happened on one day. After he was arrested, he then informed and said that he could set up a deal with Jeffrey Payne. Jeffrey Payne was called on the phone. Is there a dispute over the question that he first reached into the center console and then started to raise his arm? Absolutely, Your Honor. And that's the main crux of the dispute here. And the evidence that's presented by the plaintiff is in the form of a deposition conducted by the defendant in this case of Jeffrey Payne himself, who says that after his vehicle was rammed by multiple unmarked vehicles, that at the time that he was rammed, he did not see any police sirens. At that point, he stopped. There's a dispute about whether or not the officer ever provided any commands prior to shooting Mr. Payne. Mr. Payne says that he did not hear any commands. The officer, Moser, says that he did provide commands prior to shooting. Even in his affidavit, it's unclear on what the commands were that he actually provided. There are some times when these situations unfold rapidly and you don't have time necessarily to give a command if someone raises his arm and aims a firearm at you. I asked if there was a dispute about the fact that he reached for the console and then raised his arm. And you said there was a dispute about this and that and the rest and about hearing commands, but I didn't hear you say that there was a dispute about the fact that he raised his arm. Yes, Your Honor, there is a dispute about him raising his arms. In his deposition, after there was a collision, that's the point where the officer says that he moves over to the center console. We're disputing whether or not he moved over to the center console and then raised his hand. My client said he did not. Correct. He said that he just stayed. Flatly said he did not do those things where they considered to be furtive actions, correct? That's absolutely correct, Your Honor. And at that point, the dispute is Officer Moser says that he gave commands in his affidavit. He just says he identified himself as an officer. He doesn't say what the commands were, whether he told him to put his hands up, put his hands out of the window at that point. Now, later on, he does say that he asked what reason what reason would he have to shoot if not to save his buddy's life? Oh, absolutely, Your Honor. So prior to this, why would he why would he be shooting if it wasn't to save his buddy's life? So prior to this, there was Hector, who is the confidential informant, stated that Mr. Payne was armed. When they were conducting the control by prior to the by being completed and Mr. Payne driving off, then again, they thought that he was armed and dangerous without any evidence that he was. So when he rams the vehicle, that's giving him. The question is whether the officers had a reasonable belief that he was was armed. And when you have a combination of the informant who said that he carried a gun during his drug deals, and when he's fleeing from the police and hopping a curb and then reaching to the center console and then starting to raise his arm, the question is whether there's a reasonable belief on the part of the officer that the situation was life threatening. And we can point to this dispute and that dispute on the periphery of something. But on those central events, was it an unreasonable belief that it was a life threatening situation that the officer was confronted with? Yes, Your Honor. The circumstances of that night show that it was unreasonable for this officer to believe that any of those other officers life was in danger. The reason being is that, first off, Mr. Payne was trying to get away from the later on, find out the officers. But remember, they're in unmarked vehicles, not using their police sirens. So there's no way for Mr. Payne to know who is following him. So after they rammed the vehicle in a heavily tinted car, with Officer Moser standing behind him on a much higher position, there's no way, and that's where the jury comes in, is that there's no way that Officer Moser could have seen inside of that vehicle to determine whether or not Mr. Payne was reaching for anything at that time. And that's even more reason why the fact that he was in a cast at that time gives them even more of a reason to not believe that he was a danger. What possible reason would he have to shoot if there was no sense of endangerment? Based on the tainted evidence that was provided. Did he just fire the firearm for the heck of it? And Your Honor, that is a question for the jury because of the amount of time, the lack of amount of time, that passes between the ramming of the vehicle and the officers shooting Mr. Payne. At that point, there's no time for any kind of compliance. There's no time for Officer Moser to determine whether or not there is a firearm. And we know by the fact of the later investigation that there was no firearm. So for him to make that determination after just ramming a vehicle and basing it, even in his words, basing it off of one movement which we're disputing. Does it matter that it was later found that there was no gun if the officer had a reasonable belief based on the informant's report and the police chase and some other things that there was, that the individual was armed? It's a question of what a reasonable belief was at the time, wasn't it? Yes, and that's where all the circumstances come into play around what was going on and why the officers were there that night, what was going on with the chase, how Mr. Payne's car was pinned in so he couldn't move to begin with, he couldn't get out of the vehicle or anything like that, and then also his vantage point. I'm sorry, Your Honor. Why wouldn't it be pinned in if he was on a chase and hopping a curb and the like? So, Your Honor, the chase piece of it is I think that that's part of the limited facts that I don't think either party disputes that Mr. Payne was not evading police arrests because they did not use their police sirens. The defendants say that they used the police sirens at the moment that they rammed the vehicle, and we're saying that Mr. Payne did not see the police sirens prior to getting shot. Can I ask you about these tactics used by the police, the TVI and the pit tactics that's surrounding him in these dark cars, unmarked, no sirens, no lights? I know that it's well established that these tactics can be a seizure for purposes of the Fourth Amendment. You've just said to us that you are forfeiting your seizure, your second claim. I'm curious if it's your contention that the use of this tactical vehicle intercept can also be, in and of itself, excessive force for purposes of the Fourth Amendment. In other words, is your argument solely based on the shooting, or is it based also on the tactical vehicle intercept and the precision immobilization technique? I was struck by the ramming of a vehicle when there was no chase underway. Absolutely, Your Honor, and that's part of count one. So count two has to do with after he is apprehended in the search that took place that wasn't part of Officer Moser's doing. So your excessive force claim is based not only on the shooting, but also on the techniques employed by the police in ramming the vehicle and surrounding the vehicle and not allowing him to leave the parking lot. Correct, because, well, he was able to leave the parking lot. Right, not able to drive away. Well, he was able to leave the parking lot. He was driving for some time before they ever made any kind of moves to use that technique, which is also problematic. And we're bringing in the totality of the circumstances, and that's part of it in terms of the excessive force used, is they said that we have probable cause to arrest Mr. Payne even just by him showing up. So then why are they waiting for him to leave the parking lot? Why are they waiting for him to go and stop at an intersection? And then they're only using this technique after he has the fear of what's actually going on. Am I being robbed? Am I getting ready to be killed? And then it's only after he's rammed that he sees the police lights and he realizes that it's police. But at that point there's no time for any kind of compliance because Officer Moser discharges his firearm almost immediately after getting out of the vehicle. Why were they in a high-speed chase to begin with? It was not a high-speed chase, Your Honor. He was just following the vehicle. So prior to that, there was the controlled by that was supposed to occur between Mr. Payne and Hector, the confidential informant. Mr. Payne, based on his deposition, testimony, his recordings, he got spooked about what was going on because this is somebody that was familiar to him and apparently they had done business before in the past. So when there was another individual, Mr. Payne got spooked and he did leave the scene at that point. There was no controlled by. No, no, there was never a controlled by. Simple. There was no controlled by. Correct, correct, correct. Nor was there a chase. No, there was not a chase. They rammed his vehicle. Correct. That's deadly force, isn't it? That's correct, Your Honor. It's a very dangerous thing to do in that circumstance, especially when he's going off of the curb to try to avoid what he believes is possibly a robbery at that point. All right. So going to three. Now we're talking about gross negligence in count three. We can't get to gross negligence unless we overcome our burden in count one. But here there's, again, enough facts for the jury to decide this issue also of gross negligence. You have a set of facts where these officers are in plain clothes not using their police authority until after the point that they use excessive force. And that's a dispute of facts because the defendant is saying that they did use their police authority prior to the use of excessive force. But they also don't clarify what authority was actually being used. So all of this should be going to the jury for the jury to decide the evidence and not for the district court to have decided this case on summary judgment. But before the jury, if we were to agree with you on summary judgment, wouldn't we need to reach the issue of qualified immunity? Or wouldn't the district court need to reach that issue before the case went to a jury? So the district court did not decide the case on qualified immunity. The thought is that that was an alternative measure. But they didn't actually make any analysis based on qualified immunity, which is why we didn't appeal. That doesn't prohibit us from resolving the case on qualified immunity because you can affirm on any ground. And the court is looking at this case de novo, correct? And the court would be able to consider qualified immunity. I understand that the qualified immunity applies in a situation where the law is unclear. Correct, Your Honor. But here, the law is clear. If we're looking at even just looking at Graham v. Kahn, the law is clear that if we're looking at the factors here, that you're looking at the severity of the crime at issue. This is a hand-to-hand narcotics deal between people that are known to each other. And, Your Honor, I do only have three seconds left, but I'd like to just finish my thought if I can. I'm concerned in these kind of situations that we write opinions that restrict the abilities of officers to act to save their own lives or to save the lives of their buddies. And in these kind of rapidly unfolding situations, officers should not be given complete latitude, but neither should they be subject to excessive restrictions. I don't want to put the law in a position where the officers are precluded from taking actions to preserve their very lives and that of their colleagues. And, Your Honor, if I could just briefly respond to that. Sure, you may. Yes, Your Honor. Also, there is also an importance to preserve human life as well. And what's different in this case, which is different in other cases that this court has decided, is that these officers did not use their police powers, which was then refused, which then led to deadly force. And that's the difference in this case, and that's the distinguishing point. I'm sorry to say that, but there are all kinds of police officers who do proceed in unmarked cars. Many of the, I would say a great many officers are in unmarked vehicles, and the law doesn't prescribe that. But the law does prescribe the fact that if you're using your power as an officer to... Well, let's put it this way. Looking into a console and raising your arm, even if you were raising your arm to shoot another civilian, it wouldn't matter in terms of what you're talking about, which is the police authority. It would not matter whether someone was trying to kill a police officer or whether someone was trying to kill another, just a private citizen, a non-officer. And you made the point, which I agree with, that we have to underscore the value of human life, but that's at stake here. And this kind of situation is just... I just don't think that the law can say to officers that you can't try to disarm a person or whatever when you feel like your life is in danger or that your comrade is in danger. This would have a very sharp effect on police officers because the message would go out that you not only can't take steps to save your own life, but you can't even take steps to save your buddy's life. And the sense of camaraderie within police departments, sometimes it may be unhealthy, but many times that sense of camaraderie is necessary to law enforcement. And to say that you can't take steps to save your buddy's life, that would land hard. And, Your Honor, I don't disagree with you, but the key point that I want the court to take away is that the dispute of fact here is whether or not that arm was raised, whether or not there was that furtive movement in the vehicle, and whether or not that officer could have seen, and the credibility of that officer in being able to see that furtive movement being done. And that's where this case stands. I don't understand what alternative reason, what reason would an officer have to shoot someone if there was no sense of endangerment? And, Your Honor, that would be for the jury to decide based on what Mr. Payne's testimony is versus what Mr. Moser's testimony is. But you have to raise, you have to have a genuine dispute of material fact, not just a quote dispute. That word genuine, that word genuine in the federal rules of civil procedure is important. And I'm not sure that there's a, I don't know what reason he would have gone to fire a single shot to disarm someone. What reason would there be to do that? I know you can say there's a dispute and that's for the jury and that's a fair point. But there has to be a genuine dispute over this and that's what I'm unclear on. I understand, Your Honor. And the genuine dispute that we're saying is the officer's ability to observe what he's writing in his affidavit. And the fact that the car, both vehicles were heavily tinted, this was at night. Even in Mr. Payne's own testimony, he had trouble seeing out of the windows of the vehicle that he was in. So for the officer to say that he saw this movement occurring, that's where there's a genuine issue of material fact. Thank you very much. I appreciate your argument. I'm going to ask Judge Greger if he has any questions of you. Thank you, Your Honor. Thank you, sir. You have some time reserved for rebuttal as well. Yes, thank you, Your Honor. Thank you. Good morning. Kimberly Baucom here on behalf of Sergeant Joshua Mosher. May it please the court. I think the important starting point Can you put that microphone? I want to be sure that we hear you. Thank you. Is that better? Thank you. The important starting point here is not what the appellant claims on appeal occurred during this incident. I think we need to focus on what were the facts that were before the district court, and were those facts genuinely in dispute? Were they material facts? And I focus on the court's ruling in the Hanafi case that dictates that when we look at particularly a summary judgment motion on appeal, we focus on what was the record before the district court, and did the district court make reasonable findings based upon that record? And how do we credit those facts at that point in summary judgment in terms of who does it weigh in favor of? In this instance? Not in this instance. Just in any instance. In summary judgment, who does the presumption in terms of evidence weigh in favor of? The moving party or the non-moving party? Ultimately, it's obviously the moving party's burden, but it's the non-moving party in opposition of summary judgment to bring forward facts pointing to the record with specific sites to the record that brings into material dispute or genuine dispute those material facts. It's a material dispute as to whether or not there was any affirmative action at all. I disagree, Your Honor, for two reasons. The first is that in opposition to summary judgment, the non-moving party has to identify which of the moving party's facts they want to dispute before the court. And what we had here was a lack in Mr. Payne's opposition of any indication that he was refuting Sergeant Moser's material facts. And in specific, based on counsel's argument today, he claims now that his windows were tinted and that was too dark for Sergeant Moser to be able to see in. But one of Sergeant Moser's facts was fact number 56 where he established that he illuminated the interior of Mr. Payne's vehicle with his flashlight and that he was able to see Mr. Payne's movements after the conclusion of that traffic stop. Okay, that's one. So he could see what he said he saw. Go ahead. Exactly. The second one, Your Honor, is this thought that it is in dispute what motions were happening inside the car is refuted by not only Mr. Payne's failure in his opposition to refute Sergeant Moser's facts 57 and 58, which establish what Moser perceived when he illuminated the interior of the vehicle and saw the motions that Mr. Payne was making. Mr. Payne said he didn't make those motions. Counsel, you can't get away from that. Is that true or not? It is true that he said that in his opposition, Your Honor. The problem is that in saying that or claiming that in his opposition, he doesn't cite to a particular part of the record. He cites to his entire deposition transcript and attaches his entire deposition transcript for the district court. Did you cite anything where he said he admitted that he had furtive action? With regard to his particular position. Wait a minute. Did he admit that there were furtive actions? His argument, Your Honor, isn't that he admits that he did it. I am, Your Honor. It's that when he opposes summary judgment, he doesn't say I didn't reach or I didn't move. He says my left arm was in a cast and it would have been impossible for me to reach for a firearm or hold a firearm supported by references to the record where there was no firearm found in the car. And so really what he's claiming in opposition to summary judgment is there was no firearm in the car. So I obviously wasn't reaching for a firearm. And my left arm was in a cast. And so the argument that Sergeant Mosher didn't see what Sergeant Mosher claims to have seen is based on this assertion. I couldn't have done it because my left arm was in a cast. No, it's not. Not only did I not do it, but I'm in a condition where I couldn't do it. Right, and that alleged condition was directly refuted by the record, where at his deposition over and over again Mr. Payne admitted that it was his right arm that was in a cast. It wasn't the arm that Sergeant Mosher saw moving within the vehicle that Mr. Payne later opposed summary judgment by saying it would have been impossible for me to do that. So it was his left arm, right? It was his right arm that was in a cast. No, no, but so it was the left arm that was moving? That's correct. So he had something, two arms, right? So he reached over. That's the motion that Sergeant Mosher saw. But he said, he didn't say, he said he denied that. He denied it on the basis, the factual basis, that his left arm was in a cast. It was impossible for me to reach for a firearm. But he still denied it though. He denied, again, Your Honor, he denied it by citing to his entire deposition transcript. That's like saying, well, you know, did you steal this wallet off this desk? I was at home at the time. So I didn't deny because I didn't say I didn't steal the wallet. I just said I was someplace else. And if that individual, I think you're right, Your Honor, and if that individual supported that assertion, I was at home, by a citation to the record that was developed in discovery that would support that claim, then you would be in a different posture than what we're in right now. The failure here is a procedural failure of Mr. Payne to point the district court by citing to the record that was developed in discovery in support of his claims. And he failed to do that. And all of the citations that are contained in his opposition brief are to portions of his deposition transcript that don't have anything to do with the denial that what Sergeant Moser perceived at the conclusion of that stop didn't happen. He doesn't say that by citing to a portion of his deposition transcript where that's established. And I would draw the court's attention to the Cray case. I think it's instructive on this point. Cray was a case before this court where a non-moving party in summary judgment filed their opposition without filing anything associated with the record. They lost summary judgment, and they filed a motion to reconsider. As part of the motion to reconsider, they attached pages and pages of affidavits, deposition transcripts, but didn't cite the district court to particular parts of that record that would establish the veracity of that claim or that that claim could be supported by admissible evidence at trial. So your claim is not that there's not a genuine dispute of material fact. Your argument, in fact, is that counsel failed to point to the exact page in the deposition where that genuine dispute of material fact was established. That the opposition brief made the argument but failed to cite to the specific line and page in the deposition. Even though the deposition was attached and even though the deposition actually creates a genuine issue of material fact, it was essentially, in your argument, a failure of counsel to point to that page and line number. And on that basis, you want us to affirm summary judgment. That is what happened. And, again, I would point you to the Cray case. So it's not that there's not a genuine issue of material fact in the record below. It's simply that counsel failed to point to the exact page. That did happen. I think there's an extra argument that goes along with that, and that is that in opposing summary judgment, Mr. Payne decided to couch his objection to this issue of what was his position immediately before he got shot or when he got shot as being, I couldn't have reached for a firearm because my left arm was in a cast and there was no firearm in the car, which is every time he talks about it in his opposition, it is as part of that more global argument. It was impossible for me to reach for a firearm because my left arm was in a cast. What he does there is create a situation where it's not brought into genuine dispute what his position was or what Sergeant Moser perceived prior to discharging his firearm because, again, there's a failure to refute or to claim that he's refuting. Well, I mean, I'm reading the deposition here. It's not that hard to read. He says, well, I tried to look back because I can't really move because of the cast on my arm. I'm trying to look back over my left shoulder. I couldn't see nothing. So he said, I'm just sitting there. I don't see no lights. It's just dark. It's just high beams. Nobody's saying nothing. So he says in his deposition he was just sitting there and he couldn't move. I don't know what more he could say. The requirement is that there be furtive movement. And he says, I couldn't move. And had he argued that in his opposition by citing to his deposition transcript, and the pages that you're reading in the deposition transcript were not cited to in the opposition. The deposition transcript was, but not the page. So we get back to my question, which is your argument is fundamentally based on a failure of counsel to point to the exact line and page in the deposition transcript. Which this court in the Cray case has specifically ruled the district court has no obligation to read the entire record that the non-moving party puts forth to try to find evidence that would find in favor or would hold in favor of that person. And so here we have the same situation. We've got a plaintiff who in opposing summary judgment fails to point the court to any particular portion of the deposition transcript that would establish that it was impossible for him to have reached for a firearm because he has his arm in a left cast. The district court under this court's authority had no obligation to read that deposition transcript. The other thing that happened as a result of Mr. Payne's failure to point to the deposition is that he avoided additional evidence that exists in favor of Sergeant Mosher that would have directly refuted his claim that he didn't move or he didn't reach for anything. And what that was is a recreation that was conducted by the Fairfax County Police Department's crime scene unit where they staged the vehicles in exactly the same position at the scene at the same time of day. Sergeant Mosher participated in it and a detective sat in Mr. Payne's front seat in the position that Mr. Payne was sitting in and he was Mr. Payne's size. When they did the recreation, the detective sat still and what the crime scene detective through their observation and measurements concluded was... I think part of what you're saying is that even if he had pointed to a specific part of the deposition testimony and I think your point is well taken that you've got to give the district court some help here and that's why someone's represented by counsel. But I understand you to make not only that point, which I thought was a fair one, but the additional point that even if the attorney had pointed to the specific place in the deposition testimony that that specific part in the deposition testimony would not actually have refuted Mosher's version of events. Because Mosher was saying I saw this and a specific place in the deposition testimony would not have refuted the claim that that's what he saw. Exactly. So you've got two problems here. You've got the initial problem that my good colleague Judge Berner points out about the failure of lawyers to give reasonable help and assistance to the district court and not just dump a record or a long deposition testimony. You know, lawyers are supposed to sharpen the issues and it wasn't done. But not only that, the specific points that could have been or might have been or may have been cited don't refute what Sergeant Moser is saying he saw. Exactly. I agree with you, Your Honor. And it's not only that they don't refute it, but... There are duplicate problems here. Right. Counsel specifically refused or chose not to, in his opposition, oppose any of Sergeant Moser's material facts. And so he's stuck with this perception that Sergeant Moser had. Sergeant Moser illuminates the interior of that vehicle. He has the ability to because he's got a flashlight that's not disputed. And his perception was... Not disputed that he had a flashlight. Exactly. And that he looked into the interior of the vehicle. Exactly. And I do not know. It's also undisputed, is it not, that the informant told him that, look, this guy is a drug dealer and he carries a gun. Now, it later comes out that he didn't have, that there wasn't a gun present. But that doesn't speak to whether there was a reasonable belief on the part of the police officer at the time that there was a gun in evidence or that there was a gun on his person. And he had an informant telling him that. So there are multiple problems here with the case. And, you know, these are hard cases because nobody wants anybody to be wounded in any way, shape or form. But you just cannot have the impression go out that this court is not protected of an officer's opportunity, of an officer's ability to protect his own life and that of his buddy. That lands really hard and it's a rough kind of thing, given the facts here. I agree, Your Honor. Given the facts here. And certainly Sergeant Moser is one of those people who would never want to hurt someone else. But he testified very clearly in his affidavit, which is unrefuted by Mr. Payne. Is there any evidence here that this police officer was a renegade or had further disciplinary proceedings brought before him? I mean, does he have a bad rap sheet? Absolutely not. There's nothing. Right. This is the first scratch, if that's what it is. That is correct. On this man's record. He's not one of those individuals that's run off the rails. There's no evidence of that. And I'm sure if there had been evidence of that, it would have been in the summary judgment. And you know there are people who are in any police force who are bad, bad apples and bad actors. But this isn't as far as the summary judgment record is concerned. This is not fair. That's correct. That's correct. And Your Honor, on the point about whether Sergeant Moser reasonably could conclude that Mr. Payne was someone who might be armed when they were encountering. He had a flashlight looking into the car. That's correct, Your Honor. And we have, you know, the individual who's being viewed. And I take your point, Your Honor. There was no there was no distribution when the undercover detective got out of the confidential informants vehicle and tried to approach Mr. Payne's vehicle. He was not willing to engage in that transaction. And that was when he left the parking lot. He was found with the cocaine. But they were willing to use deadly force, not running cold to capture him. Your Honor, the TVI to address that, I would just point out that Sergeant Moser was not driving any of the vehicles. He did not conduct the TVI. But he was. I'm talking about that's the that's the circumstances, correct? That's correct. They were willing to use deadly force on someone because they believe he was about to sell drugs. They had probable cause to arrest him for possession with intent to distribute deadly force for that. And in order to accomplish that arrest, Your Honor, to prevent Mr. Payne, who they reasonably concluded was armed from leaving that scene, they got into a position where they had multiple vehicles near his vehicle. And when they use deadly force, when they know that they use deadly force, I would disagree with that. You don't think you don't think dramming someone's car is deadly force. I disagree with the characterization. I'm not characterizing anything. I'm asking you a question. I disagree with that. You disagree with what? I disagree with the notion that a tactical vehicle intercept is deadly force. What about a PIT? It's the same. It's the same thing. It's accomplished in two different ways. One is blocking and one is ramming. And so blocking, if someone's driving quickly, that could be deadly force. Ramming one car into another, that's the PIT, right? And those were two techniques that were used. I mean, I couldn't find, frankly, a single case where those techniques were used in a situation where there wasn't a chase, a high-speed chase. I couldn't find a single case. This was a highly unusual circumstance where the police were in unmarked cars with no lights, no announcement, no uniform, surrounding an individual trying to leave a scene. He was unaware, so he claims, that they were police officers. It seems reasonable to me, given that there was no announcement and no uniform and no lights, and it was nighttime. He's surrounded, and then he tries to drive away because he thinks reasonably that he's being potentially robbed or attacked by individuals who are not police officers. And then another police vehicle rams into his car. Those were the circumstances. Those were the circumstances as claimed by Mr. Payne and his opposition. Is there any argument from your client's side that those were not the circumstances? Yes. What facts that I just stated are disputed in the record? In the record, there was two recordings that happened when Mr. Payne was in the hospital. He was interviewed by two different detectives, one from major crimes, one from internal affairs, about what had happened. And those are the audio files that were attached within the joint appendix. And when he's interviewed close in time, within a couple of hours of this incident, what he says to the police was that when that TVI was occurring at the stop sign, he knew it was the police because the lights and sirens came on. And as a result of that, I went up to the curb to try to get away. I sped up. I knew it was the cops because I tried to get away. I just, like, sped off because I'm scared at that point, so I'm driving to try to get away. Mr. Payne admitted over and over again in those interviews that he knew the police were behind him, that they had their lights and sirens on, and that he jumped the curb at the stop sign to try to get away from the police. Mr. Payne doesn't want you to pay attention to that because he argues in his briefing before this court that, well, that was just a couple hours after this event happened, and so we shouldn't assign any importance to it. But admissions that he made within hours of when this happened, admitting to lights and sirens, admitting that he knew it was the police behind him, and admitting that when he experienced that TVI, it was during the time when he was trying to get away because he knew it was the police. He knew he had come to this scene to deliver narcotics, you know, according to him, to a friendly face for $50. He didn't do it because he got scared. He's trying to leave the scene. He realizes that the police are behind him. Lights and sirens come on, and he jumps the curb to try to get away. That's why what happened happened to Mr. Payne. The TVI and the pit in this context are the same motion. A tactical vehicle intercept is bumping that back tire to prevent the car from moving forward. Sergeant Moser did not commit the TVI. Did he authorize it? No, he did not. The driver is Detective Taramina. Detective Taramina conducts the first part of that TVI. They surround his vehicle in order to take him into custody. The suit is brought against one party? Exactly. Just against Moser? Only against Moser. It's not brought against the other people. Moser didn't do the intervention, did he? Exactly. He did not. He was not driving. He was nowhere. The whole thing about the intervention doesn't concern Moser, because he's the only party to the case, and he wasn't even involved in the intervention. Exactly. I would also point the court to the Mendez case, where the U.S. Supreme Court has said, even if something that happens early on in this encounter is a constitutional violation, which we don't agree that the TVI was a constitutional violation, but even if it was, according to Mendez, that purported constitutional violation does nothing down the road to make what is a reasonable use of force unreasonable. If you wanted to go for the intervention, you would have added another party. I agree, Your Honor. There would have been an additional defendant or defendants involved in the case, but that wasn't here. There are just problems all through this. Counsel, do you agree that, under the Fourth Circuit precedent, that the mere fact that someone has a gun alone can't be the basis for shooting them? I do agree. Right. So if there was no furtive motion, you would agree that there was no basis for shooting him? I do agree. I do agree. The issue here is the furtive movement, which Mr. Payne did not dispute in his opposition. Was the deposition in the record? His entire deposition was in the record. And don't we assume that a district court reads the record? No, Your Honor. We don't? We don't. Oh. And this court specifically has ruled in the Cray case that the district court does not have to. What part can the district court ignore? I'm sorry? What part can be ignored? They ignore the parts that aren't specifically cited in the opposition brief. The responsibility is on the non-moving party or any party to support or oppose that summary judgment, to point the district court to the parts of the record that would establish. He wouldn't have to. The district court, they're very able jurists. If the question is whether or not there was furtive motion, which is the sine qua non of the case, then you go to the transcript of what the person said, the plaintiff said. You don't have to search the whole place, like the whole history of where he was born and what he ate supper and all that kind of stuff and went to college. But you go to what he said at that moment, and he would say, I was just sitting there. And that is inconsistent with furtive motion. And I have no doubt that Judge Nachmanoff could have done that. But he didn't. And this court has said he doesn't have to. You think he ignored that? I don't think he ignored it. I think he looked at the parts that were specifically cited by the parties, which is what his obligation is. No, it's not. And he didn't find support for Mr. Payne's claim. You can just ignore what the plaintiff said about the very thing that's the core of the case and say, well, summary judgment, because there's no facts here. And the problem with it is that in opposing summary judgment, Mr. Payne's claim in his briefing was it would have been impossible for me to be reaching for a firearm because there wasn't a gun in the car and my left arm was in a cast. And he points to specific parts of his deposition transcript that don't support that claim. That's where the district court doesn't have to say, well, it's not where the plaintiff says it is, but they attach their entire 196-page deposition transcript, so I'll just read it and see if I can find parts. Specifically, this court has ruled the district court doesn't do that. We expect the parties. This would come as a real surprise to district courts in this circuit if we said, no, it's not sufficient for you to rely upon the citations of the party opposing summary judgment. You've got to go through and read everything and fish out something that might be arguably relevant. That would be, I can tell you, that would be a real surprise to the district courts in this circuit. And it would require them almost to take over the job of counsel because counsel has a responsibility to help out district courts and to frame issues and to sharpen issues. And it's not fair to us at district courts to take over the job of the lawyer. And it creates a situation where parties, in opposing a motion or in trying to support their motion, wouldn't worry about having to cite to particular parts. I'll just put it all in. The district court will read it all. Just dump it. Just a big dump. Here's the whole thing. It's in here somewhere. It also would create, I would submit, it would create a situation that happened here, whereas Sergeant Moser had additional evidence they could have used at summary judgment to refute the claim, I didn't move, I didn't reach, if that was actually made in opposition by Mr. Payne, in this recreation. The recreation established that if Sergeant Moser had shot Mr. Payne while he was just sitting up in the car, the bullet would have had to have gone through the car door and not the window. But when the detective reaches with his left arm and comes back up, it exposes the back part of Mr. Payne's arm. And so we had this evidence. This is in the record? No, it's not. It's in the record, but it wasn't because Mr. Payne didn't raise this issue properly in his opposition. And so there was nothing to refute with that additional evidence in the record. We've created a situation now where because he gave the court his entire deposition transcript without citing to it, where it was important, he's got a record that he can rely on on appeal, but Sergeant Moser has been denied the opportunity to have refuted that fact. If Mr. Payne had claimed in opposition this fact, your perception of what happened in that vehicle is genuinely in dispute. Here's why, page whatever of the transcript is what establishes it. If it had happened that way, the way that it's supposed to happen, according to the Cray case, then Sergeant Moser's reply would have looked much different than it looked. So one of the hallmarks of our appellate jurisprudence has been specificity. And it's not only that the specificity is required when pointing to the summary judgment record, and that point has been hammered repeatedly, but it's specificity when you object to instructions and to jury instructions. We say raise the objection specifically, point to the pages in the deposition testimony specifically. And we do that because the adversary system rests upon the ability of counsel to assist the district judge and the opposing party. Both. It contributes to the efficiency of the process, both from the bench and from the standpoint of an opposing party. And you take leave of specificity and you're just off there and never, never land. And that's, I think, a big part of what's at issue here. And then there's the backup point that when you get specific, you realize that there was a lawsuit against only one party, who wasn't involved in the intervention. You get to the point that the flashlight was there looking into the car. You get to the point that the refutation, such as it was, did not speak to the point of whether he was, he could capably have reached into the console and pointed a gun at the officer's colleague. And there are multiple hurdles here, multiple problems, and there could have been, I think, it's not that there couldn't have been a case here, there probably could. And it doesn't seem to me that we need, that there needs to be a situation where we establish precedents. Well, officers can do this and do that and do this. It all, it seems to me, falters on very specific factors. I agree. And those are more procedural factors with the way that Mr. Payne chose to go about opposing summary judgment. And the evidence, I think, shows that. Affirming the district court, there is nothing about this case that needs to be said that, oh, the officers are here to do this, they can do this, they can do that, they can shoot on suspicion. There's nothing there. Any disposition of this case does not need to be written in a permissive way. It doesn't need to be, because that's not what anybody wants. I agree. I don't want officers running all over the ranch, shooting on suspicion or whatever. This falters on some very specific grounds. I agree with you, Your Honor. And ultimately, the plaintiff or Mr. Payne's, the way that he chose to go about opposing summary judgment creates a situation that limits him on appeal to argue the things that he's now arguing. I want to ask my colleagues if they have further, Judge Gregory. Thank you. Thank you, Mr. Clark. We'd like to hear from you, sir. Yes. Mr. Clark, you handled this case below, right? Yes, I did. Well, you've been much aligned. So do you have a response? Yes. I do want to address the issue of citing. If you look, we did attach our opposition in the joint appendix, and we did cite to the very page that the court is talking and an appellate counsel is speaking about, where my client did, in fact, state that, yes, he had a cast on his arm, and there was a dialogue back and forth. What it appears that they're disputing is that the portion of the transcript where he says, I was just sitting there, I wasn't doing anything, appears just a few lines above where the citation begins. On the same page. So it's on page 127, and we cite it to page 128, which is part of that entire dialogue that he's going through where he's saying that he was just sitting there. Well, this doesn't require any hunting by the district court at all. No, no, no. Looking at the whole place and the whole panoply right there on the same page, right? Correct, correct. So for an appellee to say that there isn't a genuine issue of fact because we didn't cite to the entire page but only to the portion of the page I think would miss the entire part of why we're bringing this appeal. We're bringing this appeal because there are issues at dispute that at trial would be admissible, that at trial would come out. And I agree with you, Your Honor, that yes, if Mr. Payne was pointing a gun at an officer or making a furtive movement towards an officer, then absolutely the officer would be able to take the action that they took. But we brought this case because we don't believe that the officer was able to, one, view Mr. Payne from his vantage point and, two, there's a dispute because Mr. Payne says that he was not doing anything. He was just rammed. Yes, there are two different parts of facts. There are facts that right after he was shot and rammed by a vehicle and then brought in to be interrogated by officers, that he said to the officer, yes, I saw the lights. He didn't say that he saw the lights and started fleeing. He said he saw the lights after he had already been rammed. In the deposition, he says that he doesn't remember ever seeing lights. Yes, that's something that they can cross-examine him on at a trial. But what we're dealing with here is the summary judgment portion of it and whether or not there are these issues disputed by facts. What about the flashlight? In the flashlight piece of it, Your Honor, there is no body-worn camera saying that to support Officer Moser or even the affidavit of other officers. How far away was the observing officer? The Officer Moser? Yes. I don't know the exact, I believe. I don't want to misstate where exactly he was. At least there's nothing in the record that points to how far away he was, but I know that he was not right up on the window. If there was a flashlight shining in the car, which the officer would have had a pretty good opportunity to observe. If the flashlight would reveal any movement to the console and any raising of the arm, it would seem to me that from his vantage point that the officer would have seen all that. So the problem is that the flashlight, unfortunately the technology isn't out there, to be able to have x-ray vision through an entire seat that's sitting there. So that's part of the issue that they're saying, that he was making this movement through the driver's seat and the officer's vantage point is behind the driver's seat, and therefore the ability for him to actually see what Mr. Payne was doing was obstructed. He wasn't standing right there at the driver's place through that window. Correct, correct, correct. He was behind him and at night on top of another car that was also heavily tinted at the time. Looking over that car and in seconds makes a decision to shoot Mr. Payne based on what he heard, not based on what he saw. That's hard to speak. Not based on what he saw, Your Honor, because I agree with you, but based on what he heard about Mr. Payne and he made that judgment and decided that he was going to shoot Mr. Payne based on the fact that he was conducting a drug deal, not based on what he saw Mr. Payne doing that day. You get in a situation where officers are supposed to delay, and in their case the delay can be fatal. We're not asking for the officers to delay because, again, if the facts are true that he did see this furtive movement, that he is well within his right to take action based on that. Is it a genuine dispute? I don't see how he could not have seen. What was the flashlight end of the car for? He could see that he reached into the console? And from where his vantage point was, Your Honor, there is no way that he can see. Now, of course, Monday morning quarterbacking, and I don't want to get into the trial strategy, but him saying that, okay, I made a mistake and I shot someone, let me try to figure out why I did that on the back end. But, again, that goes to my point that this should be the trial and the jury deciding this issue. Everybody's always saying it's Monday morning quarterbacking. It's interesting how this is Tuesday, so we're not having that problem. The other lawyer had some additional time, Mr. Clark, and I want to make sure you have whatever additional time you need to make your points. Yes, Your Honor. And the last thing that I do want to say is, one, thank you, Your Honors, for having this oral argument. This is actually my first one in the Fourth Circuit after practicing for 11 years in Virginia, so I'm blessed to be in your presence today. But this case is important not because of what we're asking the court to do. We're not asking the court to change any existing law. What we're asking the court to do is to take a stand against district court judges making decisions based on factual determinations, especially when it comes to civil rights cases. The jury should be able to decide the facts if, in their opinion, there's no qualified immunity issue here and there's facts that are at dispute that a reasonable juror can decide in the favor of the plaintiff. That's all we're asking for. We're not asking for the court to make any other decisions. Facts are always in dispute. The question is whether they're genuinely so. Correct, correct. Most of the cases, that's not the case. Most every police shooting I can think of that it was undisputed there was some furtive action. The question is how you interpret it, but this one is different. As a matter of fact, the Franklin case where the person had a gun right there with him and he hit the gun and then he said, drop the gun, and he pulled it out like this and said, no, that wasn't a qualified immunity because based on the way he handled it out there, the person would have known that that was not a furtive action to be aggressive to the police officer. So this is not new ground at all. As a matter of fact, this would be new ground the other way, that a shooting is justified without a dispute as a furtive action. He says, you have a flashlight and you're behind a seat. Like you said, you were very calm. You said, take an x-ray light. Is that something that can't be done? And then you cite something that's on the same page or nearby. Oh, you would have to go through hundreds of pages. No, you don't. It's there. We talked about it. That's what our frame was talking about, the Constitution. We live under the Constitution in terms of just people going around and ramming cars. I know he's not, that person is not the plaintiff, but ramming the cars, because the Fourth Circuit said guns, drugs, and guns go together. So that would mean if that's the case, then every time somebody is a drug, well, I said he moved and shot him. But he was unarmed, but I saw him move. And as well, now that's a faster question. What other reason would he have to shoot you? We don't know, but he did. Thank you, Your Honor. We don't ask who . . . It doesn't depend on who the district judge is, but in keeping with his general approach, this was a very, very fine district judge. And I think it is at least fair to say not only who the judge is, I think you have to go beyond that. You have to say what kind of job did the judge do? That's the important thing, not who he is. But this judge, he's a fine district judge, did a very, very careful job. That ought to make a difference. I understand your position, Your Honor. Thank you. Do you have anything further, sir? No, Your Honor. Thank you for your time. We gave both of you a lot of time. Thank you, Your Honor. Judge Gregory, do you have anything further? May I be excused, Your Honor? We thank you, sir. We'll come down and greet you both. Thank you.
judges: J. Harvie Wilkinson III, Roger L. Gregory, Nicole G. Berner